Trust Company of Chicago, Successor Trustee, Appellee, v. Robert Cordeau, Appellant, and William R. Henriksen, Appellee.

Appeal of Robert Cordeau, Appellant.

Gen. No. 40,684.

532

Heard in the third division of this court for the first district at the April term, 1939. Opinion filed February 14, 1940. Rehearing denied March 12, 1940.

FREDERICK J. BERTRAM and PAUL A. F. WARNHOLTZ, both of Chicago, for appellant.

L. A. SHERWIN, of Chicago, for appellees; W. SHERWIN, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

On January 1, 1926, the Jackson Park Building Corporation executed and delivered 197 bonds for the aggregate principal sum of $100,000, payable on various dates up to and including January 1, 1934, and as security, executed a trust deed embracing the real estate and improvements known as 1540-44 East 65th Place, Chicago. A bill to foreclose the lien of the trust deed

was filed in the superior court of Cook county by the Central Republic Bank and Trust Company against the Jackson Park Building Corporation, et al. On October 20, 1931, the court entered a decree finding that under the terms of the trust deed there was due plaintiff the sum of $8,000 for solicitors' fees, an additional sum of $694 for expenses necessarily incurred, and the sum of $104,058.44 on the principal and interest of the indebtedness, or a total amount of $112,752.44. The decree directed that the amount be paid, and in default thereof that the real estate be sold by a master in chancery. After a long delay, a master in chancery offered the real estate for sale. He reported that the only bidder at the sale was the Trust Company of Chicago, which had succeeded the original complainant as successor trustee. The latter bid the property in for the benefit of all the bondholders. On July 14, 1937, a decree was entered approving the master's report of sale and distribution. The decree entered a deficiency judgment against the Jackson Park Building Corporation, mortgagor. The decree approving the sale contained the following reservation of jurisdiction: "It is further ordered that the court retain jurisdiction of the trustee, for the purpose of supervising all acts and doings of the trustee subsequent to the period of redemption and issuance of a Master's deed; and in the event no redemption is had until the final sale and disposition of the premises described in said decree, at a sale by the Trustee to a corporation now in existence or to be organized at a later date, or to any individual, and the court orders that any sale so had shall be subject to the order of the court, and the proceeds likewise shall be subject to the order of court, it being the intention of this court to retain jurisdiction until the bondholders receive their prorata share in cash or other security to be approved by this court." On August 1, 1937, the trustee, as lessor, made a lease with the Jackson Park Manor, Inc.,

wherein the premises were leased for a period from August 1, 1937, to and including July 31, 1944. The 22nd paragraph of the lease provides that if the lessor at any time during the existence of the lease receives a bona fide offer from any third party for the purchase of the premises, which the lessor deemed acceptable, the lessor would give the lessee notice in writing of such offer, with the terms thereof, and that in the event the lessee did not within 60 days after such notice, present to the lessor the offer of the lessee to purchase the premises upon the same or better terms, the lessor could convey the property to such third person and cancel the lease, upon giving the lessee at least 30 days' previous notice in writing of its intention so to cancel. The clause also obligated the lessor to sell to the lessee, if the lessee within 60 days elected to purchase, with the proviso, however, that the proposal should be submitted to the superior court of Cook county, and that if that court rejected the proposal to purchase, the lease nevertheless would continue to remain in force. The building is about 47 years old and is improved with a six-story brick and stone apartment hotel containing 90 light housekeeping units, two stores and a two-story building in the rear containing single hotel rooms. It was remodeled from a 12-flat building into an apartment hotel, with one bath for each 8 apartments. The building on the rear of the lot, which was formerly a stable, contains 20 rooms and 4 baths. The original decree of sale found that a bondholders' protective agreement dated August 25, 1930, was signed, and that a bondholders' protective committee was organized, with William R. Henriksen as chairman, and Roland P. Williams and Harold G. Stallwood as additional members. There was no redemption from the sale, and on March 29, 1938, a master's deed was issued conveying the real estate to Mabel C. Kennicott, assignee and nominee of the Trust Company of Chicago, trustee for the use and benefit of the holders of

all unpaid bonds and interest coupons. On April 20, 1938, a liquidation trust was formed between the bondholders' protective committee, consisting of William R. Henriksen, Roland P. Williams and Harold G. Stallwood and the Trust Company of Chicago, as trustee. A deed in trust dated May 2, 1938, was executed by Mabel C. Kennicott, conveying the property to the Trust Company of Chicago, as trustee, under the liquidation trust agreement of April 20, 1938. Certificates of beneficial interest were issued to the holders of the bonds and interest coupons. These provided that the interest of the holders should be personal property and not real estate.

On April 8, 1938, the trustee employed Robert Cordeau, a licensed real estate broker, to sell the real estate involved herein, and promised to pay him the usual commission. Cordeau devoted his services for the purpose of procuring a purchaser. He interested Sam Lanski, and he also endeavored to interest other prospective purchasers, all of whom he submitted to the trustee. Lanski offered to purchase the property for $27,500, payable $6,000 at the time of entering into an agreement for a warranty deed, plus $4,000 payable in quarterly installments of $500 each, and the balance considered as being paid by the purchaser by assuming the unpaid taxes and penalties to the amount of $17,500, to and including June 30, 1938. Later, the offer of Lanski provided that if the taxes and penalties aggregate less than $17,500, he would pay to the trustee the difference between the lesser amount and $17,500. On April 28, 1938, the trustee notified Cordeau that under its lease, Jackson Park Manor, Inc., had an option to meet the terms of any offer submitted. From April 28, 1938, to May 20, 1938, Cordeau continued his efforts to sell the real estate, and on May 20, 1938, he presented to the trustee a contract signed by Sam Lanski. On May 24, 1938, the trustee wrote to Cordeau that it was necessary to submit the Lanski contract to the certifi-

cate holders under the terms of the liquidation trust agreement. The letter of the trustee also stated that "It is our understanding that the Trust will pay you a brokerage commission in accordance with the Chicago Real Estate Board rates." On June 6, 1938, the trustee submitted the Lanski contract to the certificate holders, and on June 29, 1938, advised Cordeau and Lanski that the contract of purchase had been accepted by the certificate holders, and that Lanski should make a deposit of $1,000 to apply on the purchase price. Cordeau and Lanski went to the office of the trustee for the purpose of making the deposit, but were informed by the trustee that it would have to obtain from Jackson Park Manor, Inc., a waiver of its option to purchase before it could accept the $1,000 from Lanski. On July 5, 1938, Jackson Park Manor, Inc., notified the trustee of its desire to purchase the real estate upon the same terms as those submitted by Lanski. The trustee then notified Lanski that it was returning his offer to purchase for the reason that the lessee had met the offer theretofore made by him. The trustee then entered into a written contract with Jackson Park Manor, Inc., to sell the property to it for $27,500. $6,000 earnest money was deposited by Jackson Park Manor, Inc. The $27,500 was to be paid by the purchaser by payments in cash amounting to $11,000, and by the assumption by the purchaser of unpaid taxes, interest and penalties amounting then to $16,500. On July 1, 1938, the unpaid taxes, interest and penalties were estimated at $17,500. The offer of Jackson Park Manor, Inc., by agreement with the trustee, was afterwards supplemented to the effect that if the unpaid taxes at the date of the closing of the sale were less than $17,500, the difference between the amount of such taxes found to be due and $17,500 would be paid in cash to the trustee by Jackson Park Manor, Inc. The trustee then agreed to pay Cordeau a commission of 5 per cent, based upon the price of $27,500, and on July 12,

1938, wrote to Cordeau that "We shall reserve for your account the regular real estate board commission based upon the price of $27,500.00." On August 4, 1938, the trustee filed its petition in the superior court of Cook county, asking leave to sell the property to Jackson Park Manor, Inc., for $27,500, less the taxes and penalties as heretofore related. The order entered by the superior court on August 4, 1938, recites that on the motion of the attorneys for the trustee for the approval of the offer of sale from Jackson Park Manor, Inc., and upon the representation of "Mr. Breckinridge and Mr. Henriksen" that a higher offer can be obtained, it was ordered that the motion for the approval of the sale be continued to September 7, 1938, without further notice, for the purpose of presenting the increased offer, if any there be, subject to the right of the Jackson Park Manor, Inc., to meet the terms of the offer, if any. On August 5, 1938, Henriksen procured Max S. Zernes and William Sherwin to offer $30,000 in cash, less an allowance of $14,000 for unpaid taxes. A signed contract and a deposit as earnest money was delivered by Henriksen to the trustee for submission to the court. The offer was rejected by the trustee. Later, Max Zernes and William Sherwin increased their offer to $31,000, less an allowance of $14,000 for outstanding unpaid taxes. This offer was likewise rejected. On August 22, 1938, on written stipulation signed by the attorneys for the trustee and L. A. Sherwin (an attorney who represented some of the certificate holders), an order was entered in the superior court that the hearing on the trustee's petition (which the order recited was set for August 22, 1938), be continued to October 20, 1938, without further notice, and that respondents' time to answer the petition be extended to the same time; also that the trustee's petition theretofore set for hearing on September 7, 1938, be continued to October 20, 1938. On the same date (August 22, 1938), an order was entered

in the superior court, which recited that the matter came on to be heard on the petition of the Trust Company of Chicago for instructions. The order also recited much of the preceding history of the litigation. It then decreed that the trustee sell the premises to Jackson Park Manor, Inc., for $27,500, payable $7,000 in cash, $4,000 in quarterly installments of $500 each, and the balance of $16,500 to be paid by the purchaser assuming unpaid taxes, penalties and interest amounting to $16,500. The decree further directed that the order of August 4, 1938, be vacated. From the decree approving the sale to Jackson Park Manor, Inc., William R. Henriksen appealed to this court.

On September 2, 1938, a stipulation between the Trust Company of Chicago and William R. Henriksen was filed. It stipulated that the appeal from the order approving the sale to the Jackson Park Manor, Inc., taken by Henriksen, be dismissed; that the order authorizing the sale of the premises to the Jackson Park Manor, Inc., be vacated and expunged from the records of the court; that the petition filed on August 11, 1938, by the Trust Company of Chicago, be withdrawn; that the order entered on August 22, 1938, continuing the hearing of the cause to October 20, 1938, be vacated; that the order entered August 4, 1938, continuing the hearing of the cause to September 7, 1938, be vacated; that the answers filed by William R. Henriksen, William M. Breckinridge, Max S. Zernes, William Sherwin and L. A. Sherwin be withdrawn and expunged from the records of the court; that the orders of August 30, 1938, fixing the appeal bond of Henriksen be vacated and that the sureties thereon be discharged; that leave be given to the trustee to file a petition, together with a current account and report covering its acts and doings up to and including August 1, 1938; that leave be given William R. Henriksen, et al., and Jackson Park Manor, Inc., to file their respective answers to the petition of the trustee for instructions within 10 days; that

a hearing be had on the petition and the answers which may be filed thereto upon notice to all parties, after the filing of said answers; that if the court shall determine that the trustee is authorized to accept offers for the purchase of the property from any one other than the Jackson Park Manor, Inc., that such trustee shall, after the determination by the court, give notice to Jackson Park Manor, Inc., of the receipt by it of such offer, and thereupon Jackson Park Manor, Inc., shall have the right to meet the terms of such offer pursuant to the terms of the lease. On September 2, 1938, the court entered a decree, which substantially carried out the terms of the stipulation. On September 13, 1938, pursuant to a notice served on certain persons, the trustee filed a petition, and therein *inter alia* told about the offer from Lanski and Jackson Park Manor, Inc. The petition then stated that on August 4, 1938, the petitioner received an offer to purchase the property from William Sherwin and Max S. Zernes for the sum of $31,000 in cash; that the proposed purchasers had deposited the sum of $10,000 as earnest money, and that under the proposal the unpaid real estate taxes due at the time of the closing of the deal, were to be deducted from the sum of $31,000. The petition further recited that there was some legal doubt as to whether under the terms of the trust agreement and lease, it was authorized to accept further offers for the purchase of the property, or whether it was legally bound to accept the offer of Jackson Park Manor, Inc.; that petitioner had requested Frank J. O'Brien, an officer of the real estate firm of McKey & Poague, to appraise the property; that O'Brien submitted an appraisal that in his (O'Brien's) opinion the property, from the standpoint of utility and market value "might be sold for $25,000.00." The trustee prayed that the court instruct it as to the manner in which to proceed and as to which of the offers it might legally accept. On September 19, 1938, the court or-

dered that the sale of the premises be set for Friday, September 23, 1938, at 2 p. m. in open court before Judge CHARLES A. WILLIAMS. On September 30, 1938, the court entered a decree, which recited that the matter came on to be heard on the petition of the successor trustee for instructions and the answers filed thereto, and the court being fully advised in the premises found the facts to be substantially as set out in the petition. It also found that on September 19, 1938, "all parties hereto being present in court," the court on its own motion directed that a sale of the premises be held in open court on September 23, 1938 at 2 p. m.; that pursuant to the order a sale was conducted before Judge CHARLES A. WILLIAMS of the superior court; that the highest and best bid received was from Max Zernes and William Sherwin of $33,000, to be paid by the delivery of $19,000 in cash and the assumption by the purchasers of all outstanding taxes, special assessments and penalties; that if such taxes, special assessments and penalties are less than $14,000, the purchaser shall pay to the trustee the difference between the actual amount as of the date of the conveyance by the successor trustee, and $14,000; that if the general taxes, special assessments and penalties are in excess of $14,000, the purchaser shall be allowed only $14,000, that the purchasers shall also pay the premium for the unexpired fire insurance. The decree also found that by virtue of the decree of July 14, 1937, the court had retained jurisdiction to pass upon the propositions presented. The decree rejected the offer of the Jackson Park Manor, Inc., and called upon that corporation to exercise its option, should it so desire, to meet the terms of the offer made by Max Zernes and William Sherwin within 60 days from the date of the entry of the decree. The decree then declared that if the lessee did not exercise its option within 60 days to purchase the property for $33,000 on the same or better terms than were tendered by the proposed pur-

chasers, the sale of the property to Zernes and Sherwin should stand affirmed, the purchase price to be $33,000, of which $10,000 as earnest money was then in possession of the trustee, $9,000 additional to be paid at the time of the delivery of the deed, and the balance of $14,000 to be absorbed by the assumption by the purchasers of all delinquent taxes, assessments and penalties. On November 7, 1938, William R. Henriksen filed his petition in the superior court, wherein he set up the services he claimed to have performed as a real estate broker in procuring Zernes and Sherwin as purchasers of the premises. In the petition he asserted that on August 4, 1938, he appeared before Judge NIEMEYER in behalf of himself, his wife and other owners and holders of certificates of beneficial interest, and opposed the sale of the premises to Jackson Park Manor, Inc.; that at such hearing he stated to the court that if he were given time he could, as a real estate broker, procure a better bid; that he inquired of the court whether he would be allowed a broker's commission if he procured a better bid which would be acceptable to the court; that Judge NIEMEYER refused to approve the sale and instructed him to obtain a better bid; that the order of August 4, 1938, was then entered; that the matter of the approval of the proposed sale to Jackson Park Manor, Inc., was continued to September 7, 1938; that after the entry of the order he contacted prospective buyers and obtained a bid for $30,000 with the provision that the taxes would be deducted only to the extent shown by the records of the county treasurer; that the bid of $30,000 was not accepted by the trustee; that he thereupon worked further on the matter and succeeded in having the bid raised to $31,000, with a provision that not exceeding $14,000 would be deducted on account of taxes; that the latter bid was submitted to the trustee and accepted by it, subject to the approval of the court; that through petitioner's efforts the proposed pur-

chasers, Zernes and Sherwin, appeared in open court on September 19, 1938, and increased their bid to $33,000 in cash, less an allowance of $14,000 for all unpaid taxes to and including the time of the conveyance; that the proposed contract between the trustee and the purchasers was presented to the court; that such contract contained a clause providing for a brokerage fee according to the rate provided by the Chicago Real Estate Board, to be paid to petitioner; that the trustee has held up paying the claim because it represented to him that a claim for commission for the sale of the property was presented by another broker. He concluded by stating that no other broker was the procuring cause of the deal which was approved by the court, and prayed that an order be entered directing the trustee to pay over to him the sum of $1,495 as a broker's commission. On November 14, 1938, the trustee filed a petition in which it recounted the respective claims of Henriksen and Cordeau. Paragraph 3 of the petition stated that petitioner "is unable to determine which of said brokers is entitled to a commission, and it cannot pay a commission to one of said brokers without taking upon itself the responsibility of determining the doubtful questions of law and fact arising out of said transaction, and without incurring the risk of being subjected to defending itself in a multiplicity of suits and to a possible double payment of the amount due." He asked that the court grant leave "to file its answer in the nature of an intervening petition to the petition of William R. Henriksen," and that the court issue a writ of summons, directing the sheriff to summon Robert C. Cordeau to appear and answer the petition, and that William R. Henriksen be required to answer the petition. On November 14, 1938, the court entered an order granting leave to the trustee to file its answer in the nature of an intervening petition, and directing the clerk to issue a writ of summons to Cordeau and that Henriksen answer the petition. On November 18,

1938, Henriksen did answer. He repeated what he had theretofore set forth in his petition. In addition, he stated that the sale to Max S. Zernes and William Sherwin had been completed and that the purchase price had been paid to the trustee. He maintained that he was the broker who had procured the purchaser, that the sale was authorized by the court and that he was entitled to the commission. On December 19, 1938, Robert Cordeau appeared in the case for the first time. On that date he filed his appearance and an answer. The answer detailed the arrangement that he had with the trustee, and the work that he had performed in procuring Sam Lanski and then Jackson Park Manor, Inc., as a purchaser. Much of the matters set out in the answer has been thoroughly covered in out statement of the facts. The answer also stated that at the time the real estate was offered for sale by Judge WILLIAMS and at the time of the successful bid, there was no statement made by the court that a real estate commission would be paid to the broker, William R. Henriksen; that no one informed the court at the time of the making of the bid that a real estate commission would be claimed; that Henriksen was not employed by the trustee as a broker to sell the property; that the sale was a sale in open court upon a bid made in open court; that Henriksen was not entitled to receive any real estate brokerage commission; that Henriksen, at the time of the sale and also at the time of filing the answer, was the chairman of the protective committee, consisting of Roland P. Williams, Harold G. Stallwood and himself (William R. Henriksen) ; that by reason of the fact that he was a member of the bondholders' protective committee, he was a fiduciary; that because of his status, the securing of a purchaser for the real estate was necessarily in the performance of his duty; that therefore, Henriksen was disqualified from acting as a broker in the transaction; that he, Cordeau, was the only real estate broker lawfully employed to secure

a purchaser; that he did secure a purchaser who agreed to purchase the property at a price of $27,500, less a $14,000 allowance to the proposed purchaser covering taxes; that the court did not have or retain any jurisdiction after the issuance of certificates of beneficial interest under the liquidation trust agreement, and that the court did not have jurisdiction to approve or disapprove any subsequent sale of the property. The answer admitted the allegation of paragraphs 1, 4, 5, 6 and 7 of the ''answer in the nature of an intervening petition of the Trust Company of Chicago.'' Paragraph 1 of the petition asserted that the Trust Company of Chicago, prior to September 26, 1938, held title to the premises by virtue of a trust agreement dated April 20, 1938. Paragraph 4 briefly set up the claims that were being asserted against it by Cordeau and Henriksen, each claiming a commission. Paragraph 5 alleged that the trustee was then and had at all times been willing to pay the person legally entitled to receive such brokerage commission; that there were conflicting claims to ''said commission''; that it was a mere stakeholder and had no interest in the controversy and was ignorant of the respective rights of Henriksen and Cordeau, and cannot determine, without hazard to itself, which one of said parties is legally entitled to receive said commission; that it cannot pay over the money due to any of the aforesaid parties without taking upon itself the responsibility of determining the doubtful questions of law and fact arising out of said transaction and without incurring the risk of being subject to great cost and expense in defending itself in a multiplicity of suits and to a possible double payment of said commission if it should finally appear that it wrongfully determined in favor of one of the parties at the expense of the other. Paragraph 6 declared that the trustee did not collude with either of the brokers and did not ask relief at the request of either party, but solely of its own free will to avoid

being molested and injured. Paragraph 7 stated that the trustee was ready, willing and able to deposit the sum of $1,490 with the clerk of the court to abide the judgment of the court. The answer concluded by stating that Cordeau was entitled to the sum of $1,375 for the services he rendered as a broker. On December 20, 1938, William R. Henriksen, Aleth J. Henriksen, William M. Breckinridge and Leon M. Chamison, bondholders, filed a petition wherein they set up that on September 15, 1938, they filed a petition praying (a) that the court prevent a sale of the premises at the price of $27,500; (b) that the fees awarded in the original decree to the attorneys for the trustee be reduced; (c) that the trustee be required to account, and (d) that the lease to Jackson Park Manor, Inc., be canceled; that since filing the petition, the premises had been sold for $33,000, less $14,000 allowed for taxes; that the petition filed on September 15, 1938, was referred to a master in chancery; that after hearings had commenced before the master, negotiations were conducted, which resulted in the cancellation of the lease and the reduction of the fees allowed to attorneys for the complainant in the original decree from $8,000 to $5,000; that an agreement had been reached between petitioners for the benefit of all the bondholders and the trustee, whereby the trustee had reduced its fees; that all the matters referred to the master had been adjusted; that the master had agreed to accept $75 in full for the services he had rendered; that the petitioners had retained attorney L. A. Sherwin subsequent to August 4, 1938, to appear in behalf of themselves and all other bondholders in order to bring all matters to the attention of the court; that the petitioners and other bondholders agreed to pay Sherwin one-third of all sums which he, Sherwin, succeeded in obtaining for the bondholders in excess of $7.78 per $100 bond, which is the sum the bondholders would have received as their dividend from the proceeds of the sale

of the premises and from all other sources if there had been no intervention by the petitioners; that Sherwin appeared in court on numerous occasions, prepared and filed numerous petitions on which there were hearings before the court, and appeared before the master on the hearings being conducted, secured necessary documents and attended to all that was necessary to do in bringing about a settlement of the controverted questions. The petition then set out in detail the services claimed to have been rendered by Sherwin, and asserted that because of his activities the bondholders were enriched (a) in the sum of $9,000, being the difference between the offer of $27,500, less $17,500 allowance for taxes, and $33,000, the price at which the property was sold, less an allowance of $14,000 for taxes; (b) the saving for the bondholders of the payment of the 1938 taxes, which the purchaser assumed (amount not stated); (c) the sum in excess of $200 for premiums on unexpired insurance; (d) a reduction of $3,000 in attorneys' fees; (e) a saving of between $400 and $500 in fees claimed by the trustee, and (f) a saving to the bondholders by defeating the claim of the Reconstruction Finance Corporation on three $1,000 bonds. The petition stated that L. A. Sherwin had been retained by them and that he had agreed to reduce his fee to the sum of $1,750; that Sherwin had spent in excess of 350 hours; that by virtue of the services of Sherwin the bondholders will greatly benefit, and asked the court to direct that the trustee pay Sherwin the sum of $1,750, that the trustee submit a final report and account, and that on the coming in of the account the trustee be required to distribute the funds in its possession pro rata to the certificate holders. On December 20, 1938, the court found that L. A. Sherwin had "rendered valuable services and saved a large sum of money for bondholders, all parties hereto have submitted the amount which shall be allowed him as fees, in lieu of the contracts for fees he now has.

This court hereby allows said L. A. Sherwin $1500.00 as fees in full for all of his past services, and any services he shall render hereafter, and his contracts for fees with bondholders is hereby cancelled. The Trustee is hereby directed to pay this sum out of the estate prior to distribution.'' On December 21, 1938, William R. Henriksen filed a written motion to strike the answer of Cordeau and for the entry of an order that the amount he earned as commissions, be paid to him. On December 23, 1938, the attorneys for the Trust Company of Chicago, complainant, filed a petition wherein they stated that they consented to the reduction of the fees allowed to them in the original decree to the extent of $3,000; that L. A. Sherwin had been allowed $1,500 for his services and that they had sufficient funds on hand to pay the fees and asked for an order authorizing the trustee to make payment of $1,500 to Sherwin and $2,500 to the attorneys for the complainant, which was the balance due after deducting $3,000 which they had allowed. On December 23, 1938, the court entered an order directing the trustee to pay Sherwin $1,500, and the attorneys for the trustee the sum of $2,500, being the balance due them, and the same attorneys the sum of $375.42, advanced and expended by them in the foreclosure proceeding and in the administration of the trust estate. On December 27, 1938, the court entered an order which recited that the cause came on to be heard on the petition of Henriksen and the answers of the Trust Company and Robert Cordeau, and that the court being fully advised in the premises found that the court on August 4, 1938, refused to approve the sale of the premises to Jackson Park Manor, Inc., and directed Henriksen, a licensed real estate broker, to procure a higher bid, and if successful and approved by the court, that Henriksen would receive his regular real estate broker's commission; that Henriksen did procure a purchaser who paid a price of $33,000; that the purchase was approved by

the court, and that Cordeau had nothing to do with the sale of the premises to the purchasers. The order also found that Cordeau did not produce a purchaser who was ready, able and willing to buy the premises at a price which would be approved by the court; that the order entered August 22, 1938, before Judge STANTON which approved the sale of the property to Jackson Park Manor, Inc., was entered in error; that on September 2, 1938, the order was vacated; that Cordeau did not procure Zernes and Sherwin to purchase the property; that Henriksen procured these persons as purchasers, and that he, Henriksen, should receive the broker's commission of $1,490. The decree concluded by directing the clerk of the court to deliver the sum of $1,490 to William R. Henriksen. On December 27, 1938, the court also entered a separate order sustaining the motion of Henriksen to strike the answer of Cordeau and granting leave to Cordeau to file an amended answer within 5 days. On that date the court also entered a separate order authorizing the clerk of the court to receive the sum of $1,490 from the trustee. Cordeau elected to stand by his answer. He thereupon prosecuted an appeal from the order of December 20, 1938, allowing L. A. Sherwin the sum of $1,500 as fees, the order of December 27, 1938, wherein the court sustained the motion to strike his (Cordeau's) answer, and the decree entered on December 27, 1938, finding that Henriksen was entitled to the payment of a commission and directing the clerk of the court to pay the commission to Henriksen.

In a complaint instituted for the purpose of forcing rival claimants to interplead, the plaintiff should be in a position where he is merely a stakeholder. If his conduct has been such that he is obligated to pay each of the rival claimants, manifestly, he cannot relieve himself by filing an interpleader. In proceeding by way of interpleader, the proper practice is for the court to determine whether the interpleader proceed-

ing has been properly brought. If it has, then an interlocutory decree is entered, requiring the plaintiff to deposit the fund with the clerk, dismissing him and requiring the parties to interplead in order to determine how the fund shall be disposed of. However, under the factual situation before us, the defendants have, by their pleadings and conduct, recognized the regularity of the procedure, and that the trustee was merely a stakeholder.

Cordeau urges that the court erred in striking his answer. On a motion to strike, all facts that are well pleaded, are admitted. Cordeau insists that his answer is legally sufficient to entitle him to recover compensation from the Trust Company of Chicago for the services rendered at its special instance and request. He reiterates the general rule that a broker earns his commission when he procures a purchaser acceptable to the seller, and a contract is signed or entered into between the purchaser and the seller. He also states that the liquidation trustee had authority to employ brokers to sell the property, and that the intervention of the court could not operate *ex post facto* to deprive him of a commission theretofore earned by him. It is obvious that if he had actually earned the commission, he could not be deprived of it. However, inseparably coupled to the question as to the right to a broker's fee, is the clause in the decree of July 14, 1937, reserving jurisdiction. It will be noted that the clause retains jurisdiction over the trustee for the purpose of supervising all acts and doings of the trustee subsequent to the period of redemption and the issuance of a master's deed. It also contemplates that if no redemption should be made, then until the final sale of the premises, any such sale should be subject to the order of the court, and that the proceeds should also be subject to the order of the court. The clause concludes by reciting that it is "the intention of this court to retain jurisdiction until the bondholders receive

their pro rata share in cash or security to be approved by the court.'' We are satisfied that the court had the right to reserve jurisdiction to pass upon a future sale of the property and of the distribution of the proceeds of the sale. Appellant maintains that the jurisdiction of the court was exhausted by the rendition of the final decree, the sale of the premises and the approval of the master's report of sale and distribution, the expiration of the period of redemption on March 17, 1938, and the conveyance of the property to the liquidation trustee on April 20, 1938. He argues that even if the reservation of jurisdiction effected a continuance of jurisdiction after the expiration of the period of redemption nevertheless such continued jurisdiction was terminated by the distribution of certificates of beneficial interest in the liquidation trust to the former bondholders, such distribution constituting ''their pro rata share in cash or security'' contemplated by the order of July 14, 1937. He also declares that if we consider that it was necessary to obtain the court's approval of the sale, that such approval was in fact obtained in the order of August 22, 1938, and that the subsequent vacation of the order could not affect his rights. He was not a party to the stipulation by which the order of August 22, 1938, was vacated. Having decided that the court had the right to reserve jurisdiction to approve the sale and distribution of the proceeds, we turn to consider the contention that when the certificates of beneficial interest were distributed to the former bondholders, the intent of the reservation was substantially carried out. No cash was distributed. Cordeau asks us to consider the distribution of the certificates of interest as a receipt by the former bondholders of their respective shares of the ''security.'' Our view is that the language contemplated the distribution of cash or the equivalent of cash. If a sale were consummated, it would be likely that the purchaser would pay part in cash and part in a mortgage, secur-

ing the notes or bonds. These notes or bonds would then constitute securities. In the event of sale, in the distribution of part cash and part bonds securing a purchase money mortgage, it cannot be doubted that the intent of the clause would be carried out. However, the substitution of certificates of beneficial interest for the bonds does not in our opinion exhaust the power reserved in the court. The court, therefore, still retains jurisdiction to pass on any proposed sale of the property. Any broker dealing with the trustee, did so with knowledge of its limited powers. When the final proposal to purchase was made by the lessee, Jackson Park Manor, Inc., it was submitted to the court by the trustee. The record does not affirmatively show that Cordeau knew that the approval of the court was sought. His pleading is silent on whether or not he did know. However, it is common knowledge that a real estate broker keeps in close touch with a deal that he is attempting to negotiate. An order was entered by the court approving the sale to Jackson Park Manor, Inc. On the same day, a contradictory order was entered by the same judge. It is apparent that in the entry of these two conflicting orders there was some misunderstanding. However, the order approving the sale was vacated by stipulation after Henriksen had appealed. It is true that Cordeau was not a party to the stipulation. Therefore, he would not be bound by the same; in fact, he did not come into the case until he was served with a summons, subsequent to the filing by the trustee of an answer in the nature of an interpleader. We are convinced that it was necessary to obtain the approval of the court before a sale could be made. The wisdom of that procedure is shown by the fact that, due to the necessity of obtaining the approval of the court, the purchase price was raised from $27,500 to $33,000. Being of the opinion that it was necessary to obtain the approval of the court, it follows that the trustee, in its capacity as such, would not be obligated

to pay a commission until the terms and conditions of the sale were approved by the court. It was necessary for the broker not only to procure a buyer who was ready, able and willing to buy and to enter into a contract to buy, but also that the court approve the purchase before the broker would be entitled to his commission. While the answer of Cordeau shows that he did procure purchasers who were ready, able and willing to buy on certain terms, and who entered into a contract to buy, nevertheless, it is undisputed that the court did not approve the transaction. The court, under the circumstances disclosed, had a clear right to vacate the order of August 22, 1938, approving the sale, which it did. Cordeau does not claim that he had anything to do with procuring the purchaser to whom the property was actually sold.

Having decided that Cordeau is not entitled to receive a commission, his interest in the litigation ceases. However, the court in sanctioning the sale to the ultimate purchasers, decided that Henriksen was entitled to a broker's commission. Henriksen alleged that Judge NIEMEYER stated that at the time he opposed the approval of the sale to Jackson Park Manor, Inc., if he procured a purchaser who would submit a higher bid and the bid were accepted, he would be paid a commission for his services. Cordeau in his answer states that no commission was promised at the time the bid was raised to the sum of $33,000 in the court room before Judge WILLIAMS. He does not deny that Judge NIEMEYER made the statement which Henriksen asserts was made by Judge NIEMEYER. The record shows that the chancellor was justified in decreeing that the clerk pay the commission of $1,490 to Henriksen. Cordeau also levels criticism at the allowance of a broker's commission to Henriksen because Henriksen, being a member of the Bondholders' Protective Committee, was a fiduciary, owing a duty in any event to devote his talents and energy for the benefit of the bondholders.

However, the court, in deciding that Henriksen was entitled to the commission, knew of his position as a member of the Bondholders' Protective Committee. There was no concealment of that fact. He was a licensed real estate broker, and if there was a full disclosure and an understanding that despite his position as a member of the committee, he would be allowed a commission if he were successful in procuring a purchaser whose bid was acceptable to the court, it would be proper to allow him a commission for his services. Furthermore, having reached the conclusion that Cordeau is not entitled to a commission, he, Cordeau, would not have any further interest in the litigation.

Cordeau also assails the order which allowed attorney L. A. Sherwin a fee of $1,500 for the services which he claimed he rendered. We cannot understand how Cordeau, who is not a holder of a certificate of beneficial interest, can object to the order whereby fees were paid to attorney Sherwin. He was brought into the case for the purpose of forcing Henriksen and himself to interplead. The record does not show that he had any interest other than to collect the brokerage fee which he claims he earned. It does not appear that any party to the foreclosure proceeding, or any bondholder, objected to the order directing the payment of the fee. Evidently, the chancellor who entered the order concluded that the services that were rendered by attorney Sherwin warranted the payment of $1,500 to him.

For the reasons stated the orders of the superior court of Cook county of December 20, 1938, December 23, 1938, and December 27, 1938, are affirmed.

*Orders affirmed.*

HEBEL, J., and DENIS E. SULLIVAN, P. J., concur.